```
             IN THE UNITED STATES DISTRICT COURT

       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                         - - -

 UNITED STATES OF AMERICA  :   CRIMINAL ACTION
                           :   23-CR-215-02
                           :
             Plaintiff     :   James A. Byrne Courthouse
        vs.                :   Philadelphia, Pennsylvania
                           :        July 13, 2023
 TORI SANDERS              :
                           :
             Defendant     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                         - - -

   TRANSCRIPT OF VIOLATION OF PRETRIAL RELEASE HEARING
      BEFORE THE HONORABLE DAVID R. STRAWBRIDGE

          UNITED STATES MAGISTRATE COURT JUDGE

                         - - -
```

APPEARANCES:

For the Government:     CHRISTOPHER PARISI, ESQUIRE
                        UNITED STATES ATTORNEY'S OFFICE
                        615 Chestnut Street, Suite 1250
                        Philadelphia, Pennsylvania  19106

For the Defendant:      ELIZABETH TOPLIN, ESQUIRE
                        FEDERAL DEFENDERS OFFICE
                        601 Walnut Street, Suite 540
                        Philadelphia, Pennsylvania  19106

                         - - -

Also Present:           Tamika Baxley
                        Pretrial Services Officer
Deputy Clerk/
ESR Operator:           Sharon Scott


TRANSCRIBED BY:         Drummond Transcription Service
                        Haddon Heights, New Jersey  08035

   Proceedings recorded by electronic sound recording,
transcript produced by computer-aided transcription
service.

1               (At 1:39 p.m. in Courtroom 5A.)

2               THE COURT:  All right.

3               Tori Sanders, oh, here we are, okay.  Thank you, Ms.
4    Toplin.

5               All right, this is an initial appearance in connection
6    with a violation for pretrial release.

7               Has there been any discussion between the Government
8    and Ms. Toplin with respect to the proceedings and how we -- how
9    we might proceed from here?

10              MS. TOPLIN: Your Honor, there have discussions and I'm
11   very familiar with Ms. Sanders' case, however, I don't believe
12   that we have an agreement as to the --

13              THE COURT:  Okay, good, all right --

14              MS. TOPLIN:  -- resolution here.

15              THE COURT:  -- that's fine, that's perfectly fine.
16   Okay.  Counsel.

17              MR. PARISI:  Your Honor, Christopher Parisi on behalf
18   Government with me at counsel table is Tamika Baxley with
19   Pretrial Services.

20              THE COURT:  Ms. Baxley.

21              PRETRIAL SERVICES OFFICER BAXLEY:  Hi, your Honor.

22              MR. PARISI:  Your Honor, there's a -- a convoluted
23   issue with this case, but the defendant was indicted back in
24   May, she then was on pretrial release with a number of
25   conditions through June.  And -- and --

1               THE COURT:  This is all of 2023?

2               MR. PARISI:  Correct, your Honor.

3               We're talking the last month and a half, two months.

4               THE COURT:  Hm-hmm.

5               MR. PARISI:  The defendant failed in almost every

6    respect on Pretrial Services, failure to report as directed,

7    failure to return phones, cease controlled substance abuse,

8    violations of location-monitoring services, so on and so forth.

9               As a result of that, a violation notice was --

10   initially, there was a two-week period, where Office Baxley just

11   notified the Court of the problems, but continued supervision.

12              Several weeks went by, and they continued, the

13   problems continued, Officer Baxley filed a violation of notice

14   with Judge Hodge.

15              We had a hearing on the 11th of this month, we spent

16   about an hour and a half with Judge Hodge, where we went over

17   all of the violations and the defendant's requirements.  The

18   defendant acknowledged all of them.

19              And Judge Hodge modified the conditions to change the

20   location-moderating from radio frequency to GPS monitoring,

21   which required a switch out of the ankle monitor.

22              The defendant was ordered to go down --

23              THE COURT:  And why was that done?

24              MR. PARISI:  They just changed the ankle bracelet from

25   one technology to the other.

1          THE COURT: Was that at the request of the -- of the
2 defendant?
3          UNIDENTIFIED SPEAKER: Pretrial Services.
4          MR. PARISI: It was at the request of Pretrial
5 Services and Judge Hodge ordered that on the 11th.
6          THE COURT: Okay.
7          MR. PARISI: The same day, the defendant was ordered
8 to go to Pretrial Services to effectuate that change and while
9 there, she became angry, ah, cursed out, Ms. Baxley and was told
10 to leave the building, because of her behavior.
11          She was ordered to return the next day and in the
12 interim, Judge Hodge issued a warrant for a violation of
13 pretrial release.
14          My understanding is, yesterday, she appeared back at
15 Pretrial Services and when the U.S. Marshals attempted to detain
16 her, she fought with the U.S. Marshals to the point, where there
17 was a physical struggle until they could get her into handcuffs
18 and we're now here today.
19          So, it's the Government's position for all of those
20 reasons, that she should be detained.
21          And I would just point out that we -- we had a
22 scheduled status hearing for July 19th, next week with Judge
23 Hodge before all of this happened in the last the last forty-
24 eight hours.
25          So, we'd ask that she'd be detained and -- and we will

1   certainly, follow up with Judge Hodge on the 19th from there.

2          THE COURT:  All right.

3          Is there any -- any suggestion that that date would be

4   utilized for the purpose of making a final determination as to

5   her status?

6          MR. PARISI:  Well, we -- that's what we've been

7   talking about, your Honor, we're trying to figure out, the best

8   path forward and -- and that is our plan, your Honor, is to come

9   up with a plan and approach Judge Hodge and see where we'd go

10  from there.

11         THE COURT:  All right.

12         With the notion -- with the notion, that the alternate

13  objective is for the folks not to have to be on supervised

14  release, if not necessary?

15         MR. PARISI:  Correct.

16         It's -- it's a pretrial release, but yes, sir --

17         THE COURT:  Yes.

18         MR. PARISI:  -- if there is a -- a muse, where

19  everyone feels that Ms. Sanders will be -- will no longer be a

20  risk to herself and others, then that's always a possibility --

21         THE COURT:  Okay.

22         MR. PARISI:  -- but we're just not there right now.

23         THE COURT:  So, of course, that's all up to Judge

24  Hodge, obviously, and my responsibility is only to make sure,

25  that she appears on the 19th of July?

1               MR. PARISI:  Yes, sir.

2               THE COURT:  Okay.  All right.

3               Ms. Toplin?

4               MS. TOPLIN:  Yes, your Honor.

5               And, your Honor -- your Honor, I -- this is Elizabeth

6    Toplin, standing for Kathleen Gaughan, as I've indicated I am

7    very familiar with this case, I've been working on it with Ms.

8    Gaughan.

9               And I was present at the hearing on Tuesday when Judge

10   Hodge ordered -- allowed Ms. Sanders to remain on bail and

11   ordered that the monitoring devices be swapped.

12              Subsequent to that hearing -- and just so, the Court

13   is aware -- at that hearing, were Ms. Sanders, her children's

14   father and her sister and also her young two-year-old daughter,

15   who was asked to -- ah -- go out of the courtroom, so was

16   outside with the child's father.

17              Ah, subsequent to the hearing, Ms. Sanders did go to

18   Pretrial Services, her sister went as well, they were arguing.

19   Ms. Sanders, I'm going to --

20              THE COURT:  You mean -- you mean, the two -- the two

21   individuals?

22              MS. TOPLIN:  The two sisters.

23              THE COURT:  Yes, okay.

24              MS. TOPLIN:  I -- I'm not going to suggest that Ms.

25   Sanders was calm, because she wasn't, she was upset during the

1  hearing and the post hearing, but she did as she was told and
2  she went to Pretrial and she stayed at Pretrial and she stayed a
3  Pretrial, I think, that she got loud and -- ah, Ms. Baxley asked
4  her to leave and to return the next day.
5          Ms. Sanders left, returned the next day as instructed
6  and she did not know -- Ms. Sanders did not know that a warrant
7  had issued.  I don't even believe that Ms. Baxley knew that a
8  warrant had been issued.
9          What happened was that Ms. Baxley -- ah, as per Judge
10 Hodge's order, indicated the -- what's called, a disturbance
11 that occurred in the Pretrial Office on the Tuesday before -- on
12 the day before -- so, when Ms. Sanders returned on Wednesday,
13 the -- the Marshals were there to arrest her, which came as a --
14 she was blindsided, basically.
15         And -- and she did struggle and I'm not -- I'm not
16 denying that, however, ah, had that not occurred, had the
17 Marshals not been there to, essentially, surprise her and take
18 her into custody, because to her knowledge, she hadn't done
19 anything wrong the day before, she was told to leave, she left
20 and then, she came back.
21         So, ah, Ms. Sanders has two children, as I've
22 mentioned, she's here today supported by her mother, they are in
23 the front row, friends of the family, also --
24              UNIDENTIFIED SPEAKER:  I'm the father.
25              MS. TOPLIN:  -- her children's father.

1           So, your Honor, there is no question that, this case
2   does have, in terms of its pretrial status, it has a bit of a
3   difficult history.  But the circumstances that bring us here
4   today, I think, really result from more of confusion on Ms.
5   Sanders' part.
6           THE COURT:  More -- more of what?
7           MS. TOPLIN:  Confusion, not knowing that the Marshals
8   were going to be there to take her in to custody, because as far
9   as she was concerned, she was doing exactly what she had been
10  told to do, which was to leave on Tuesday and return on
11  Wednesday.
12          So, I am mindful, I recognize that there is a hearing
13  in a week, I realize that.  But Ms. Hodge -- Judge Hodge had
14  indicated that she was going to give Ms. Sanders a chance to do
15  the right thing and to comply and Ms. Sanders thought, that she
16  was on her way to doing that, when she was taken off the street.
17          So, I'm asking for --
18          (Coughing at 1:47 p.m.)
19          MS. TOPLIN:  -- to allow her, give her the chance
20  between now and next Wednesday, she appeared as directed
21  yesterday, knowing that she was getting the monitor on her.  She
22  will appear next Wednesday.  She and Ms. Baxley have a very open
23  line of communication.  So, I am asking the Court to allow her
24  be released today.
25          In addition, your Honor, the Court should be aware

1  that she is on -- on, ah, suboxone, ah, so that has to, you
2  know, if -- if the Court does not grant her release, that means
3  to continue -- she's also pregnant.
4           So, for -- and she was concurrent with her suboxone
5  and she was also in mental-health treatment, ah, part of the
6  issue that brought us to court on Tuesday, was inconsistency
7  related to her court treatment, but she in mental-health court
8  treatment -- not mental-health court, she is in mental-health
9  treatment at the Net.
10          And so, she does have the supports in place, she was
11 making an effort to comply with the conditions and she -- she
12 really hasn't had an opportunity to do that between Tuesday and
13 today.
14          THE COURT:  All right.
15          I'll hear from the Government.
16          MR. PARISI:  Your Honor, just a couple of
17 clarifications.
18          Judge Hodge requested the warrant, this was Judge
19 Hodge's request for the warrant, because at our hearing on
20 Tuesday, Judge Hodge made it abundantly clear, that any
21 violation, no matter has minor, would result in detention.
22          She went so far as to tell the defendant, that if she
23 appeared before Judge Hodge, again, on a violation, the
24 Government wouldn't have to go so far as to make an argument for
25 detention.

1                And it was twenty minutes later that the defendant
2   caused a scene at Pretrial Services, which was loud enough, that
3   she was ordered to leave the building.
4                The next day, when the U.S. Marshals did their job to
5   serve the warrant on the defendant --
6                THE COURT:  Well, wait a minute, before you -- before
7   you'd get to that, then, I'm a little bit confused --
8                MR. PARISI:  Yes, sir.
9                THE COURT:  -- because, really, this is a
10  determination for Judge Hodge, ultimately, to make.
11               MR. PARISI:  Hm-hmm.
12               THE COURT:  And I'm hearing, between Ms. Toplin and
13  you, that they heard -- both of whom were present, yes --
14               MR. PARISI:  Yes, your Honor.
15               THE COURT:  -- at the time, that I'm hearing that
16  Judge Hodge did not simply -- it -- it doesn't work for -- for
17  either, Mr. Toplin or it doesn't work for the Government and
18  which -- which is it?
19               MR. PARISI:  Yeah, I'm sorry, your Honor?
20               THE COURT:  It doesn't work -- the circumstances of
21  what we'd have to do now, it's -- you know, understanding it's a
22  -- it's a week and a week is only a week, but a week is a week.
23               And what I'm concerned about is, what was the
24  understanding that Judge Hodge would have given to the
25  participants, who were present -- Ms. Baxley -- Mr. Baxley, Ms.

1  Sanders and the -- their representatives, right, in terms of
2  what might happen next?
3          If she had said -- indi -- if she has said as you
4  suggested that, you know, the slightest infraction would be one
5  that would require her to be brought back in and it's -- it's,
6  you know, as I say, just -- a week is a week.  But if that's the
7  case, then I would -- I would agree with your position.
8          But what I hear from Ms. Toplin is, that she's
9  demonstrated that she would come in -- she does have some
10 support -- but she would come in and she did come in on the day
11 after where she, apparently, according to her -- according to
12 what I understand from Ms. Toplin -- didn't have any
13 understanding as to what was there waiting for her -- whether or
14 not, there was an obligation for that to be done or not, is --
15 is a different question.
16         But that's -- that's where I'm sort of getting to and
17 that was the case, it seems to me, there might be -- there might
18 be an acceptance of some risk, there would be for her not to
19 appear and some -- you know, some -- some danger to the
20 community.
21         But that's kind of -- that's kind of a situation, that
22 Pretrial Services is -- you know, works -- works in all the time
23 and I understand it and I get it.
24         MR. PARISI:  Your Honor --
25         THE COURT:  But I -- but, I mean, I guess, I'd want to

1  get to that part of Ms. -- Ms. Toplin's argument, that would
2  pertain to an understanding, you believe and I -- would you -- I
3  guess, you -- you think it's in terms, it should be covered the
4  other way.
5         But apparently, from what I'm hearing from Ms. Toplin,
6  it is that she believes that, reasonably, Ms. Sanders, ah, did
7  not -- did not have any expectation as to why she was to be
8  there, the next day, is -- is that a fair way to say it --
9         MS. TOPLIN:  No, no, Ms. Sanders --
10        THE COURT:  -- Ms. Toplin?
11        MS. TOPLIN:  -- Ms. Sanders -- Ms. Sanders knew
12 exactly, why she was to be there the next day, that was when she
13 was told by Ms. Baxley to return to switch out the equipment.
14 That's why she came back on Wednesday, because on Tuesday, she
15 was told to leave, come back tomorrow morning between 9:00 and
16 12:00 and we're going to swap out your equipment.
17        THE COURT:  Okay.
18        MS. TOPLIN:  Leave, calm down, come back tomorrow,
19 which is exactly what she did --
20        THE COURT:  All right.
21        Well, what -- what's your --
22        MS. TOPLIN:  -- so --
23        THE COURT:  -- position on that?
24        MR. PARISI:  Judge Hodge said, we're going to modify
25 your conditions, we're coming back in one week on the 19th and

1  I'd want to hear that there's been no violations, absolute
2  compliance.
3          UNIDENTIFIED SPEAKER:  Hm-hmm.
4          MR. PARISI:  And that's when Judge Hodge said to Ms.
5  Baxley, if there is even slightest violation, I want to hear
6  about it --
7          UNIDENTIFIED SPEAKER:  Hm-hmm.
8          MR. PARISI:  -- immediately.
9          Judge Hodge spent an hour and a half with the
10 defendant, going line by lone through the conditions making sure
11 the defendant understood them and that the defendant understood
12 that she would not -- that Judge Hodge -- would not tolerate the
13 slightest misstep going forward.
14         UNIDENTIFIED SPEAKER:  Hm-hmm.
15         MR. PARISI:  Twenty minutes later, the defendant
16 caused a scene at Pretrial, which required her to be ordered out
17 of the building, that's a violation twenty minutes, after Judge
18 Hodge spent an hour and a half with her.
19         The next day at Judge Hodge's request, a warrant
20 issued and the defendant's reaction to that -- while she may
21 have been surprised and I understand that, I don't dispute that
22 she was surprised -- her reaction to the U.S. Marshals trying to
23 effectuate the warrant was to fight them.  She fought the U.S.
24 Marshals, the next day, rather than comply with a lawful order
25 of this court.

1          So, I recognize that she returned the next day, but
2  she violates her location monitoring, almost every day and she
3  fights with law enforcement, that's an unacceptable risk for
4  both appearance and the safety of the community.
5          Given we have a hearing next week, we'd ask that she
6  be detained, at least, until that hearing.
7          THE COURT:  Yes, all right.
8          Well, that -- the last part, is for sure, that's going
9  to be -- up to Judge Hodge.
10          Ms. Toplin, do you want to respond one more time?
11          MS. TOPLIN:  I -- I would just say there's really --
12  so, what Mr. Parisi just described is -- it's exactly, how I
13  would describe it, I think, the difference between that
14  recitation and the previous one, is that Judge Hodge did, in
15  fact, tell Ms. Baxley, if anything happens, you'll let me know
16  about it.  I think that what Mr. Parisi said previously, is
17  Judge Hodge said, she would issue a warrant if there was any
18  violation.
19          So, in Ms. Sanders' mind -- and this is what the Court
20  sort of needs to understand -- when she was told to leave and
21  come back tomorrow, in her mind, she was -- it was no violation,
22  I was hot, it was taken care of, I left.
23          UNIDENTIFIED SPEAKER:  No, that's not it.
24          MS. TOPLIN:  So, whether or not, Judge -- which
25  exactly -- which is exactly, why she returned on Tuesday, calm

1   and ready to get her monitoring equipment switched.

2            THE COURT: Okay. Ms. Baxley.

3            PRETRIAL SERVICES OFFICER BAXLEY: Yeah, your Honor, I
4   just want to be very clear, okay. All of what Attorney Toplin
5   and Attorney Parisi is saying, is absolutely correct, I wanted
6   to be clear.

7            When I directed Tori to leave the Pretrial Office, you
8   know, she did in -- initially, say, you know, kept questioning
9   why and I said, Tori, I need you to leave, you can, either,
10  leave or I will have to call the Marshals to have you removed
11  from the office. She left, she, her sister and her boyfriend,
12  Richard left the Pretrial office.

13           When she left, I staffed the case with the supervisor,
14  who was on duty, Supervisor Kim Colleto (ph) stated to me:

15           I want you to notify the Judge as she requested.

16           She said, any time you need to notify me, even if it's
17       before the 19th, I need you to leave me know what's going
18       on.

19           I sat at my computer, I typed out exactly what had
20  just transpired. Unbeknownst to me, I'd receive an email back
21  from Judge Hodge, that I am to file a petition for a warrant and
22  have Tori come back before the Court and appear back before her
23  for a violation of pretrial release.

24           Initially, in court on Tuesday, it was scheduled for
25  next Wednesday to be a status report, that is being changed into

16

1   a violation of pretrial release hearing to determine whether Ms.
2   Sanders will remain in the community or whether she'll be
3   detained pending any further court proceedings.
4           So, I just wanted to be clear, that I emailed the
5   Judge and told her, what happened and her directive back to me
6   was:
7           I want you to file a petition for a warrant.
8           So, I did what was asked of me and no, I did not
9   convey that to Tori, because the day before that, she was
10  already hostile in my office.
11          No, I did not call her and say, hey, Tori, we have a
12  warrant for your arrest, I need you to come into the office.  I
13  allowed her to come on in, while I typed up the warrant.  The
14  warrant was executed, the morning before -- two hours before --
15  she reported, the warrant was docketed.  So, I just wanted to be
16  clear about that.
17          THE COURT:  All, right, okay.
18          This is very difficult for me to make determination, I
19  realize, as you have said, it's a week -- it's a week.
20          But my judgment is, that we're trying to read tea
21  leaves with respect to what Judge Hodge said or didn't say.
22          My judgement is that the circumstances here are such,
23  that it would be appropriate and proper for her to be detained
24  pending the final hearing with -- that you're going to have with
25  them on the 19th of July.  So, that's the -- that's the way the

1  order will be.  Thank you.
2              PRETRIAL SERVICES OFFICER BAXLEY:  Thank you, your
3  Honor.
4              MR. PARISI:  Your Honor, that concludes my business,
5  may I be excused?
6              THE COURT:   Yes, you may.
7              MR. PARISI:  Thank you.
8              THE COURT:  Thank you, Mr. Parisi.
9              (Mr. Parisi leaves the courtroom at 1:56 p.m.)
10             (Adjourned in this matter at 1:56 p.m.)
11                              * * *
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

    I, a court-appointed transcriber, certify that the foregoing is a correct transcript from the electronic-sound recording of the proceeding in the above-entitled matter.

*[signature: Gail Drummond]*

Date: 5/2/24

Gail Drummond
28 8th Avenue
Haddon Heights, New Jersey  08035
(856) 546-6270